UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHELBEY DAFFER | * | CIVIL ACTION |
| VERSUS | * | NO. 25-2224    DIV. 2 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | * | M.J. CURRAULT |

## ORDER AND REASONS

Plaintiff Shelbey Daffer seeks judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). ECF No. 1; *see also* 42 U.S.C. § 1381a. The parties consented to the undersigned Magistrate Judge's jurisdiction for determination pursuant to 28 U.S.C. § 636(c). ECF No. 10.

## I.    PROCEDURAL BACKGROUND

Plaintiff Shelbey Daffer, then a 29-year-old woman, filed an application for supplemental security income ("SSI") on November 11, 2023, which was formally submitted on December 6, 2023. ECF No. 7, Tr. at 228-35; 270-72. Her age classification at all relevant times was that of a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c). Daffer alleges she is disabled due to Postural Orthostatic Tachycardia Syndrome (POTS), Persistent Postural-Perceptual Dizziness (PPPD), and Supraventricular Tachycardia, commencing on January 6, 2022. ECF No. 7, Tr. at 113-14, 274. Plaintiff later amended the onset date to December 2, 2022. *Id.* at 100, 217.[1]

Plaintiff's application was denied at the initial level on February 23, 2024, and on reconsideration on March 8, 2024. *Id.* at 113-36. On April 1, 2024, Plaintiff requested a hearing

---

[1] Plaintiff's medical records reflect reports of symptoms beginning in 2022 after having COVID. ECF No. 7, Tr. at 67, 72, 84.

before an administrative law judge ("ALJ"), which was initially scheduled for September 5, 2024, but continued to January 15, 2025, at Plaintiff's request. *Id.* at 137, 166, 190, 209.

The administrative hearing was conducted on January 15, 2025. *Id.* at 95-112. Plaintiff appeared and testified at the hearing, and she was represented by counsel Adam Meunier. *Id.* at 97-107. Carma Mitchell, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.* at 107-111. On February 6, 2025, the ALJ issued a decision denying Plaintiff's application. *Id.* at 15-26. She requested review of the decision. *Id.* at 225-27. The Appeals Council denied review on September 24, 2025, rendering the ALJ's decision the final decision of the Commissioner for purposes of this Court's review. *Id.* at 1-9.

Plaintiff filed this matter on October 30, 2025. ECF No. 1. In accordance with the December 31, 2025, Scheduling Order, Plaintiff filed her brief in support of social security appeal, treated as a summary judgment motion, on January 29, 2026. ECF Nos. 8, 11. The Commissioner filed an opposition on March 30, 2026, and Plaintiff did not file a Reply. ECF No. 15.

## II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff seeks reversal of the ALJ's decision and remand to the agency for further administrative proceedings to address whether her combined impairments medically equal Listing 2.07. ECF No. 1 at 2. She identifies two issues for appeal:

1.  The ALJ failed to follow a proper legal procedure by neglecting any analysis of whether Listing 2.07 was medically equaled.

2.  In assessing the persuasiveness of Plaintiff's alleged symptoms, functional limitations and testimony, the ALJ relied on utterly irrelevant evidence which may not meet the substantial evidence test for supportability.

ECF No. 11 at 2.

## III.    ALJ's FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.  The claimant has not engaged in substantial gainful activity since November 11, 2023, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments: vertiginous syndromes and other disorders of vestibular system; and cardiac dysrhythmias (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, stoop frequently, kneel frequently, crouch frequently, crawl frequently. The claimant can work at unprotected heights occasionally and around moving mechanical parts occasionally.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on June 17, 1994, and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 11, 2023, the date the application was filed (20 CFR 416.920(g)).

ECF No. 7, Tr. at 20-21, 24, 26.

## IV.  **EVIDENCE IN THE RECORD**

### A.  **Factual Background**

Plaintiff testified that she had not worked since 2020, at which time she was a part-time, self-employed dancer. *Id.* at 102-03. She also earned some income from operating an OnlyFans account in 2022. *Id.* at 103. Plaintiff testified that, since she fell ill, she struggles with brain fog

and dizziness where she forgets where she is, falls over when standing up too fast, and her heart races so fast that she cannot breathe. *Id.* When these episodes occur, she lies down or sleeps. *Id.* at 104-05. She does not know what triggers the episodes, which can start by tilting her head back, exerting herself or bending over too many times, and she has these episodes a few times a week. *Id.* She also has blurred vision. *Id.* at 105. Plaintiff had a VNG test that resulted in a diagnosis of PPPD and nystagmus and an MRI that showed a right temporal cystic lesion. *Id.* at 105-06. She had no treatment from January until December 2024 due to lack of insurance. *Id.* at 106-07.

Plaintiff did not complete the work history report form and indicates that she has never worked. *Id.* at 264-69, 274. Plaintiff's Function Report indicates she lives with her partner in a house. *Id.* at 282. She describes lying down most of the day because she gets winded after 20 minutes from standing or walking, ill from bending over, and her brain fog causes her to be forgetful and intermittently unable to comprehend spoken word. *Id.* She feeds her dog and, on good days, also feeds the chickens. *Id.* at 283. She does not indicate any problems with dressing, bathing, or personal care other than the use of a shower chair. *Id.* Her partner reminds her to eat, and she uses pill organizers and phone alerts for medicines. *Id.* at 284. She prepares meals once or twice a week but cannot stand in one place for lengthy periods; she also switches laundry but cannot do housework or yard work when she is having a bad day. *Id.* Plaintiff goes outside when necessary and can go out alone, but she prefers not to drive because she has difficulty focusing, misses stop signs, and gets motion sickness. *Id.* at 285. She goes to the grocery store with her partner once or twice a month. *Id.* She does not pay bills because she is too forgetful but does handle a savings account and checkbook. *Id.* She watches television and plays videogames and talks to others on the phone and online. *Id.* at 286. Plaintiff indicates her illness has affected lifting, squatting, bending, standing, walking, sitting, kneeling, talking, hearing, stair climbing, memory, completing

tasks, concentration, understanding and following directions but not reaching, seeing, using hands and getting along with others.  *Id.* at 287-90.

### B.  Medical Evidence

I have reviewed the medical records and the ALJ's summary of the medical evidence.  *Id.* at 21-24.  The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights as noted herein.

After noting Plaintiff's alleged disability and reported symptoms and reviewing the relevant records, the ALJ found that claimant had severe impairments of (1) vertiginous syndromes and other disorders of vestibular system and (2) cardiac dysrhythmias, which significantly limit her ability to perform basic work activities but did not meet or exceed any of the listed impairments.  *Id.*  at 20-21.  The ALJ further found that these medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.  *Id.* at 22.

> Objective medical imaging generally supported the above severe impairments. A transthoracic echocardiogram showed normal ejection fraction of 60-65%, trace mitral regurgitation, trace tricuspid regurgitation, and no pericardial effusion. (Exh. 1F/51). The claimant briefly wore a Holter Monitor before discontinuing it due to a rash. In the nearly 26 hours of wear, she had three episodes of supraventricular tachycardia. Otherwise, results were generally within normal limits. (Exh. 1F/56). An EEG was normal during awake and drowsy periods, without any evidence of focal, diffuse, or generalized abnormalities. (Exh. 2F/1). Brain MRIs revealed a T2 bright avoid lesion within the anterior right temporal lobe, most likely reflecting a dilated perivascular space.

> Upon reexamination, the right temporal cystic lesion was stable and non-enhancing, likely reflecting focal gliosis or neuroepithelial cyst. (Exh. 1F/113, 119; 2F/5, 6, 8). The MRI findings were not considered to be the cause of the claimant's alleged symptoms like dizziness and floating. (Exh. 4F/6, 9). A venous duplex evaluation showed venous insufficiency/reflux in the bilateral CFVs and SFJs but otherwise there was no evidence of deep venous thrombosis or superficial thrombus in the bilateral lower extremities. (Exh. 3F/16). Video-nystagmography [("VNG")] testing revealed central vestibulo-ocular pathway involvement with down-beating gaze-evoked and positional nystagmus in two of

six positions; and mild right peripheral vestibulopathy, with a right caloric weakness and slight left-beating first-degree gaze evoked nystagmus. (Exh. 4F/9, 22). A video head impulse test was normal. (Exh. 4F/22). A comprehensive audiologic was performed and was within normal limits. (Exh. 4F/6, 22). Further, tilt table testing was performed and was negative for hypotension, arrhythmia, or loss of consciousness. (Exh. 6F/4; 7F/4).

Examination findings were somewhat consistent with the above severe impairments. The claimant reported issues with dizziness, brain fog, balance, and blurry vision. This led to her being diagnosed with POTS after a 24-hour sodium level was suggestive of it, despite other negative findings such as a negative tilt table test. (Exh. 1F/111; 6F/7). Notes indicated this was "likely a presumed diagnosis given her constellation of symptoms." (Exh. 3F/8).

Otherwise, exams were generally normal. The claimant often appeared as alert, oriented, and in no acute distress. (Exh. 1F; 2F; 6F; 9F; 3F; 4F; 7F). The claimant sought fairly minimal treatment during the relevant time period. The treatment sought was often related to nonsevere issues, such as itchy skin, rashes, small wounds, and mild gastrointestinal concerns. (e.g., Exh. 1F). She went nearly a year without seeking medical care in 2024 and the most recent exam provided was normal. (Exh. 7F/5; 9F/4). At the hearing, she testified she broke up with her boyfriend, did not have insurance, and "floated around" as why she did not seek treatment. (Hearing Testimony).

Cardiovascular exams were generally normal, with regular rate and rhythm, no murmur, normal peripheral perfusion, and normal pulses. (Exh. 1F/5, 9, 14, 17, 22, 27, 32; 6F/7; 3F/6, 8, 11, 14; 7F/7). Her extremities were normal with no clubbing, cyanosis, or edema. (Exh. 1F/5, 9, 14, 18, 27, 32; 6F/7; 3F/6, 8, 11, 14; 7F/7). She denied issues of passing out, although she reported that she "has gotten close." (Exh. 3F/10).

Examinations of the claimant's ears, eyes, and head typically showed normal tympanic membrane, ear canal, external ear, and other normal findings. (Exh. 1F/8; 6F/7; 3F/6, 8, 11, 14; 4F/4, 10, 22; 7F/7). Her coordination was within normal limits. (e.g., Exh. 1F/112; 2F/11). Neurological findings were generally normal with no neurological deficit observed, intact cranial nerves, no spontaneous or gaze-evoked nystagmus, normal motor functioning, normal sensation, and normal speech. (Exh. 1F; 2F/2, 10; 9F/4; 3F/6, 8, 11, 14; 4F/4, 10; 7F/7). Further, the Dix-Hallpike test was negative bilaterally. (Exh. 4F/4, 22).

The claimant has been treated relatively conservatively. The claimant's POTS condition as treated with various medications along with compression stockings, increased water intake, and increased salt intake. (Exh. 6F/7; 3F/8; 7F/7). Medication such as Propranolol was helpful but she still endorsed breakthrough symptoms. (Exh. 3F/7, 10). Nortriptyline resolved her dizziness but she did not like the feeling of urinary retention, so she ceased it and her symptoms returned. (Exh. 4F/12). Dramamine and sitting still helped. (Exh. 4F/22). The hearing and balance specialist informed her they likely did not have a great solution for her symptoms other than antidepressants, after repeated testing with mostly normal-to-mild findings and normal exams. (Exh. 4F/13).

6

*Id.* at 22-23.   The ALJ found the agency medical source opinions generally persuasive and consistent with the narration and medical records.  *Id.* at 24.  The agency reviewers found Plaintiff's statements about intensity, persistence and functional limitations not consistent with the objective medical evidence alone and only partially consistent with the non-medical evidence in the file.  *Id.* at 116, 123.[2]  They noted that the POTS diagnosis was not supported by recent tilt table testing, which was normal with no hypotension or arrhythmia, and that, while there was an SVT diagnosis resulting from Halter monitor, "the actual report shows a single 4 beat episode of SVT with HR 256 and a single sustained SVT episode with HR 145 lasting 12 minutes."  *Id.* at 117, 124.  Also discussed were the absence of any noted severe neurological impairment or exam findings indicative of difficulty ambulating, and Plaintiff had a normal heart rate and blood pressure at all visits with normal gait and no apparent lightheadedness.  *Id.* at 117-18, 124-25.  While the reviewers also noted that abnormal VNG, which showed some central issues and 33% peripheral vestibular insufficiency, her Dix-Hallpike test was negative.  *Id.*

### C. **Vocational Expert Testimony**

The VE Carma Mitchell, testified at the hearing, with a stipulation as to her qualifications as a VE.  *Id.* at 107-111.  Mitchell testified regarding her general approach used to estimate positions and numbers of jobs, including the Dictionary of Occupational Titles, Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles, Transitional Classifications of Jobs, Occupational Employment Quarterly, Specific Occupation Selector Manual, Bureau of Labor statistics, census information, and her 40+ years of experience.  *Id.* at 107-08.  The ALJ posed a hypothetical of an individual of the same age, education, and no relevant work history as

---

[2] The findings that Plaintiff's symptoms are inconsistent with objective testing are indeed confirmed in the medical records.  For instance, Plaintiff reportedly had two "typical episodes" where she lost time during the EEG as well as stuttering speech, but no seizures were seen on the EEG.  Tr. at 52.

Plaintiff who is limited to light work with the following postural limitations: can frequently climb ramps and stairs, can never climb ladders, ropes or scaffolds, can frequently stoop, frequently kneel, frequently crouch and crawl, and environmental limitations, can occasionally work in unprotected heights and moving mechanical parts. *Id.* at 110. Mitchell testified that such a person could perform identified unskilled, SVP-2, light jobs, such as marker (185,000 positions), routing clerk (60,000 positions) or folding machine operator (13,000 positions). *Id.*

The ALJ then modified the hypothetical to add that the person would miss three to four times a month due to physical health issues. *Id.* at 111. In response, Mitchell testified that, with added restriction, the individual would not be able to maintain sustained full-time work without accommodation. *Id.*

Plaintiff's counsel then asked whether the identified jobs would be available if, assuming the facts of the ALJ's first hypothetical plus the additional limitation that the individual would be required to occasionally (defined as 10-15% of an average workday) take occasional breaks to lay down to relieve various symptoms. *Id.* at 111. In response, Mithcell testified that those limitations would not be tolerated, and the person would not be able to sustain or maintain full-time competitive employment. *Id.*

## V.    <u>ARGUMENTS ON APPEAL</u>

Plaintiff attacks the ALJ's finding that her condition does not meet or medically equal the criteria in the Listings of Impairments. ECF No. 11 at 2, 4, 6-8.[3] Plaintiff argues that ALJ's statement that she "does not meet the requirements of listing 2.07 of labyrinthine-vestibular function because the claimant does not have function demonstrated by caloric or other vestibular tests **and** hearing loss established by audiometry" (ECF No. 7, Tr. at 21 (emphasis added)) is

---

[3] Plaintiff also asserts that the agency medical opinions as conclusory and unsupported by medical evidence, attacking their reliance on the tilt table testing more heavily than the abnormal VNG test. ECF No. 11 at 2-3.

incorrect because she did have an abnormal VNG test, which is caloric or other vestibular test.  ECF No. 11 at 4.[4]  After conceding that she had no hearing loss as required by Listing 2.07, Plaintiff asserts that her myriad of other symptoms (blurred vision, brain fog and lightheadedness) "are the medical equivalent of hearing loss." *Id.* at 4, 7.  For that reason, she argues remand is required for an assessment of medical equivalence because the ALJ failed to explain why those conditions were not the medical equivalent of hearing loss.  *Id.* at 4-5, 7-8.  Plaintiff also argues that the ALJ cited to "utterly irrelevant evidence" (i.e., "exams were 'generally normal,'" Plaintiff was "alert, oriented and in no acute distress," "normal motor functioning, sensation and speech") to discount Plaintiff's reported symptoms.  *Id.* at 9-11.

In response, the Commissioner argues that the ALJ complied with SSR 17-2p and recent Fifth Circuit guidance, both of which Plaintiff ignores, and she attempts to shift her burden to prove that her impairments are medically equivalent to a Listing to others.  ECF No. 15 at 2-4 (citing ECF No. 7, Tr. at 20; *Williams v. Bisignano*, No. 25-30258, 2026 WL 359915, at *2 (5th Cir. Feb. 9, 2026)).  The Commissioner contends that the ALJ not only considered all medical testing and evidence (both the abnormal tests cited by Plaintiff and various other tests reflecting normal results) and also the "fairly minimal" medical treatment recommended due to Plaintiff's "largely normal tests and exams."  *Id.* at 4-6 (citing ECF No. 7, Tr. at 22 (citing Tr. 343-461)), 8-9.  Moreover, the Commissioner argues that Plaintiff cannot establish that her blurred vision, brain fog, lightheadedness are the medical equivalent of progressive hearing loss because equivalence requires "at least equal in severity and duration," and Plaintiff expects improvement as reflected by her request for a one-year continuing disability review.  *Id.* at 6-7 (citing Tr. at 328).  Finally, the Commissioner explains that the ALJ's consideration of Plaintiff's motor and sensory functions,

---

[4] Plaintiff's audiological exam reflected normal hearing in both ears.  Tr. at 511.

cognitive presentation, speech and normal gait, coordination and balance are directly related to her reported brain fog that rendered her allegedly unable to "speak coherently," and her dizziness and balance issues.  *Id.* at 9-11.

## VI.   APPLICABLE LAW AND ANALYSIS

### A.  Standard of Review

The role of this Court on judicial review under § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied in evaluating the evidence.[5]  The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[6]  This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[7]  Despite this limited function, the court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support the decision.[8]  Procedural perfection in administrative hearings, however, is not required; a reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected.[9]

### 1.  Substantial Evidence

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[10]  The

---

[5] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[6] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[7] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[8] *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).
[9] *Mays v. Bowen*, 837 F.2d 1362, 1362-63 (5th Cir. 1988) (per curiam).
[10] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).

ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[11]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[12]  The Commissioner, not the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[13]

Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.[14]  The court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[15]

### 2.  Credibility Determinations

When a claimant gives subjective testimony, the ALJ has the responsibility to evaluate the claimant's credibility.[16]  To determine credibility, the ALJ must review the entire record and express specific reasons supported by evidence in the case record for his credibility findings, but the ALJ does not have to discuss every guiding regulatory factor.[17]  In this case, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

---

[11] *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

[12] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).

[13] *Halterman ex rel. Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton,* 209 F.3d at 452).

[14] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing § 405(g)).

[15] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord. Perez*, 415 F.3d at 462 (citation omitted).

[16] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted).

[17] *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011) (citing *Clay v. Barnhart*, 214 F. App'x 479 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility.")).

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  ECF No. 7, Tr. at 18-19.

If the ALJ explains credibility findings and substantial evidence supports those findings, the court must affirm the credibility assessment.[18]  Because the ALJ is best suited to make a credibility determination, the court gives considerable deference to the ALJ's findings if substantial evidence supports those findings.[19]  The ALJ's credibility determinations in this case are supported by substantial evidence and will not be disturbed on judicial review.

### 3. The ALJ's Discretion in Evaluating Medical Evidence

The ALJ provided a proper summary of the relevant medical evidence in the opinion, and this summary accurately reflects the available records.  ECF No. 7, Tr. at 16-20.  An ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion.[20]  An ALJ considers several factors when assessing the weight to be given to medical opinions – the length of the treatment, frequency of examination, nature and extent of treatment relationship, support of physician's opinion afforded by the medical evidence of record, consistency of opinion with record as a whole, and specialization of the treating physician.[21]  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[22]

### B. **Standard for Entitlement to Benefits**

To be considered disabled and eligible for DIB, a claimant must show that she is unable to perform substantial gainful activity because of a medically determinable physical or mental

---

[18] *Undheim v. Barnhart*, 214 F. App'x 448, 450-51 (5th Cir. 2007).
[19] *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009) (citation omitted) ("Credibility determinations are generally entitled to great deference . . . .").
[20] *Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam).
[21] *Newton*, 209 F.3d at 456 (citing 20 C.F.R. § 404.1527(c)).
[22] *Id.* at 455 (citation modified).

impairment.[23]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[24]  To qualify as a disability, the impairment must be expected to result in death or have lasted (or is expected to last) for a continuous period of not less than 12 months.[25]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability; rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[26]  Thus, to be considered disabled and eligible for benefits, a claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity.[27]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[28]

> In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.[29]

The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[30]  When the Commissioner shows that the claimant is capable of engaging in

---

[23] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[24] § 423(d)(3).
[25] *Id*. § 423(d)(1); *see also Copeland*, 771 F.3d at 923.
[26] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (alteration in original) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).
[27] 42 U.S.C. § 1382c(a)(3)(A); *see also* §§ 416(i)(1), 423(d)(1)(A).
[28] 20 C.F.R. §§ 404.1501-99 & Appendices, §§ 416.901-98.
[29] *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) (citation omitted); *accord. Newton*, 209 F.3d at 453.
[30] *Audler*, 501 F.3d at 448; *Newton*, 209 F.3d at 453.

alternative employment, the ultimate burden of persuasion shifts back to the claimant.[31]

### C. **The ALJ Did Not Err In the Step 3 Analysis**

At Step 3, the claimant must show that her impairment meet or equal one of the listed impairments set forth in Appendix 1 of the regulations (the "Listings").[32]  The Listings are physical and mental impairments that are considered disabling regardless of the claimant's age, education, or work experience.[33]  If a claimant satisfies satisfy all criteria and severity necessary to "meet" a listing,[34] the claimant is disabled, and the sequential evaluation ends.[35]

The burden of proof rests with the claimant at this step.[36]  Ultimately, she has the burden of proving that her impairment or combination of impairments meets or medically equals a listing.[37] That burden requires the claimant to provide and identify medical signs and laboratory findings that support all criteria for a step 3 impairment determination.[38]  If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any listing are not present.[39]

If a claimant does not exhibit all of the requirements of a listed impairment, medical equivalence may be established by showing that her unlisted impairment, or combination of

---

[31] *Newton*, 209 F.3d at 453; *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citations omitted).

[32] *See* 20 C.F.R. § 404, subpt. P, app. 1, Listing of Impairments ("Listings").

[33] *See Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).

[34] *See* 20 C.F.R. § 404.1525(c)(3), (d); *Hale v. Sec'y of Health & Hum. Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (per curiam); *see also Zebley*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

[35] *Jones v. O'Malley*, 107 F.4th 489, 493 (5th Cir. 2024) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Zebley*, 493 U.S. at 530; *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)).

[36] *Audler*, 501 F.3d at 447-48.

[37] *Thomas v. Astrue*, No. 07-053, 2009 WL 2777867, at *3 (N.D. Tex. Aug. 31, 2009) (citing § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990)).

[38] *McCuller v. Barnhart*, 72 F. App'x 155, 158 (5th Cir. 2003); *Selders*, 914 F.2d at 619; 20 C.F.R. § 404.1526(a).

[39] *Selders*, 914 F.2d at 620.

impairments, is equivalent to a listed impairment.[40]  An impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment.[41]  To demonstrate equivalency, a claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment."[42]  Thus, an impairment is medically equivalent to a listed impairment in Appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment.[43]

At Step 3, the ALJ considered two listings, Listings 2.07 and 4.05.  ECF No. 7, Tr. 20-2`.

Listing 2.07 reads:

> 2.07 Disturbance of labyrinthine-vestibular function (including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> > A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> > B. Hearing loss established by audiometry.

Listing 4.05 reads:

> 4.05 Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

Plaintiff does not argue that the ALJ should have considered any other listing nor that she medically equaled either of these listings.  Rather, Plaintiff argues that, although she had no progressive hearing loss (and thus did not meet Listing 2.07), her other symptoms are the medical

---

[40] *Carrillo v. Astrue,* No. 09-44, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (citing *Zebley*, 493 U.S. at 531).
[41] *See* § 404.1526(a) ("Your impairment[ ] is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."); 20 C.F.R. § 416.926(a) (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance).
[42] *Jones*, 107 F.4th at 497 (citing *Zebley*, 493 U.S. at 531; *Selders*, 914 F.2d at 619).
[43] *Woodridge v. Colvin*, No. 15-485, 2016 WL 4253971, at *9 (M.D. La. July 14, 2016), *R.&R. adopted*, 2016 WL 4257051 (M.D. La. Aug. 10, 2016).

equivalent of hearing loss for purposes of medical equivalence to Listing 2.07, and the ALJ erred

in not explicitly addressing that argument at Step 3.

> To support a finding on medical equivalence at Step 3, the record must contain:
>
> 1. A prior administrative medical finding from a[ ] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding,
> 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or
> 3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.[44]

Plaintiff, however, fails to explain how her impairments were equal in severity to all of the criteria

for Listing 2.07, including hearing loss.[45]

> Moreover, when the adjudicator does not believe the evidence reasonably supports finding

medical equivalence, he need not articulate specific evidence supporting that finding:

> If an adjudicator at the hearings or [Appeals Council] level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.
> . . .
> . . . If an adjudicator at the hearings or [Appeals Council] level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a

---

[44] SSR 17-2p, 2017 WL 3928306, at *4.
[45] *James W. v. Saul*, No. 20-13, 2021 WL 673264, at *4 (D. Utah Feb. 2, 2021) (rejecting Listing 2.07 equivalence argument where plaintiff failed to show how impairments were equal in severity to all of the criteria for Listing 2.07); *Joel W. v. Saul*, No. 19-3193, 2021 WL 822526, *7-8 (D. Minn. Jan. 25, 2021) (rejecting Listing 2.07 equivalence argument where plaintiff failed to show progressive hearing loss), *R.&R. adopted*, 2021 WL 754147 (D. Minn. Feb. 26, 2021).

subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.[46]

Indeed, in *Williams v. Bisignano*, No. 25-30258, 2026 WL 359915, at *2 (5th Cir. Feb. 9, 2026) (per curiam), the Fifth Circuit expressly rejected Plaintiff's argument that the ALJ must explicitly analyze medical equivalence at Step 3. As in *Williams*, the ALJ in this case gave a thorough and detailed explanation for why he concluded Plaintiff was not disabled throughout the sequential analysis, during which he considered and addressed the cumulative effects of all of Plaintiff's limitations, including those relied upon in this appeal. This later articulation is sufficient for the Court to determine the ALJ's basis for finding lack of medical equivalence at Step 3.

### D. Harmless Error

Even if the ALJ had erred in not articulating his reason for not finding medical equivalence at Step 3, Plaintiff bears the burden of showing that this alleged error was prejudicial because the harmless error doctrine applies to administrative determinations.[47] And the Fifth Circuit has specifically held that it will not vacate a judgment unless the substantial rights of a party are affected.[48] "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time."[49] Courts apply the harmless error doctrine in Social Security disability cases when the error does not impact the outcome of the case and, therefore, does not prejudice the claimant.[50]

---

[46] SSR 17-2p, 2017 WL 3928306, at *3; see also *Gibson v. Kijakazi*, 643 F. Supp. 3d 78, 88-89 (D.D.C. 2022) (explaining that ALJs need not articulate specific evidence supporting equivalence findings at step three if they believe the record evidence does not reasonably support a finding of equivalence because later articulations of why the individual is or is not disabled will provide a sufficient rationale for subsequent reviewer to determine the basis for the equivalence finding).

[47] *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

[48] *See Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) ("Even if we did find that the ALJ was required to request further documentation, we would affirm, because Jones has not met her burden of showing that any error was prejudicial." (citing *Audler v. Astrue*, 501 F.3d at 448 (noting that "'procedural perfection in administrative proceedings is not required' as long as 'the substantive rights of a party have not been affected.'"))).

[49] *Mays*, 837 F.2d at 1364.

[50] *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam) (finding that when an error does not render the ALJ's determination unsupported by substantial evidence, it does not prejudice the claimant's substantive rights and is only harmless error).

Here, although the ALJ did not articulate his reasons for rejecting the medical equivalence argument at Step 3, which he is not required to do, the ALJ's analysis reflects that he nevertheless fulfilled his obligation to serve as the decisionmaker on medical equivalence by thoroughly reviewing the evidence and determining that the medical record evidence did not support an equivalency finding, or any disability finding.  Again, the ALJ considered, and cited to, each piece of medical evidence referenced by Plaintiff, including her persistent dizziness, tachycardia, brain fog, VNG test results, and MRI results.  ECF No. 7, Tr. at 21-24.  He articulated the abnormal test results relied upon by Plaintiff but also noted the numerous normal test results and unremarkable findings documented throughout the records as well as the state agency medical consultant findings. *Id.*  The ALJ's citations to the record demonstrate his thorough review of the evidence and his fulfillment of the responsibility to make a medical equivalency determination.

## VII.    **CONCLUSION**

The ALJ's failure to articulate why he did not find medical equivalence at Step 3 does not constitute error under the express terms of SSR 17-2p.  Although Plaintiff disagrees with the ALJ's decision, the record reflects substantial evidence in support of his conclusion that Plaintiff's impairments do not meet or equal any listing, specifically either Listing 2.07 or 4.05.  As the ALJ applied the appropriate legal standards, and substantial evidence supports his decision that Plaintiff does not meet or equal any Listing, including Listing 2.07, and that Plaintiff has the ability to perform jobs that exist in significant numbers in the national economy, his finding that she is not disabled as defined by the Act is appropriate.  The asserted errors are without merit.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Claimant's motion (ECF Nos. 1, 11) be **DENIED** and that the Complaint be **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this __30th__ of June, 2026.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

19